29  259
6ap236

29h 259
163a 108

## THE PEOPLE OF THE STATE OF NEW YORK, Respondents, v. ONAFRIO MANGANO, Appellant

*Criminal action — a new trial may be granted because the verdict is not supported by the evidence — Code of Criminal Procedure, secs. 465–485 — what evidence is insufficient to show that a murder was committed with "deliberation."*

Since the adoption of the Code of Criminal Procedure, a motion for a new trial may be made in a criminal action upon the ground that the verdict is against the evidence; and an appeal from the judgment brings before the General Term, for review, the decision of such motion, as well as the proceedings upon the trial.

Upon the trial of the defendant for murder, it appeared that he, together with one Cornettia and the deceased, were all working together, in a room in the State's prison, peeling potatoes. Cornettia called the deceased by an insulting name, whereupon the latter struck Cornettia with a stick. Cornettia then seized a stick or stool and attacked the deceased. The defendant then picked up a broom and joined in the attack. The parties were then separated, a convict taking the broom from the defendant and thrusting him aside a distance of two or three barrels. The defendant immediately took the knife which he had been using in his work, rushed towards the deceased and struck him with it, inflicting a fatal blow, from which he died. The whole affray lasted from two to five minutes. There was no dispute or ill-feeling between the parties prior to the fight.

*Held,* that the evidence was insufficient to authorize the jury to find that the act was done with a "deliberate" and premeditated design; and that a verdict finding him guilty of murder in the first degree should be set aside.

APPEAL from a judgment, entered in this action upon the verdict of a jury, and from an order denying a motion for a new trial, made under section 465 of the Code of Criminal Procedure.

*Francis Larkin, Michael J. Keogh* and *Isaac N. Mills,* for the appellant.

*C. Frost,* for The People.

CULLEN, J.:

The prisoner, a life convict, was convicted of murder in the first degree for killing a fellow convict, Williams, at the Sing Sing State prison.

Two exceptions were taken to the charge of the court. It is urged that it was error to charge "that no length of time is

required," previous to striking the blow, in which to premeditate and deliberate. If it were conceded that such a statement, standing by itself, were erroneous, I do not think the exception here well taken. The expression was not a single isolated proposition submitted to the jury, but must be construed in connection with the whole contents of the charge on that point. The district attorney asked the court to charge in the language above given :

" By the Court — I will charge that no particular length of time is required ; but that no time is required, I will not charge. (Defendant excepts.)

" Mr. Baker — I mean no appreciable length of time.

" The Court — I will charge that no length of time is required, but there must be deliberation and premeditation. (Defendant excepts.) "

Taking all of this together, the charge was unobjectionable, in my opinion. In effect it was that no particular time was necessary, provided there was deliberation and premeditation. Upon being requested to charge that the word " deliberate " has a different meaning and significance from the word premeditated, the court said : " I suppose there is a slight shade of difference. I will so charge." To the first statement the prisoner excepted. We think there is substantial difference between those two terms as used in the statute. But we think no question was raised by the exception. The court charged as requested. It had already defined the meaning of these terms accurately. If the prisoner wished such definition made with greater minuteness, there should have been a direct request to that effect. We think, therefore, neither exception tenable.

But the question is presented to us, a motion for a new trial having been made, that the verdict is against the evidence, that is, that there was no sufficient evidence of deliberation to justify the conviction in the first degree. Formerly in criminal cases courts could not grant new trials on such grounds. Now, by the express terms of the law, a motion for that purpose can be made, and an appeal from the judgment brings before us for review the decision of such motion as well as the proceedings upon the trial. The power of interfering with the verdict in a criminal case is doubtless to be exercised with caution, especially where the question of fact to be determined

is one incapable of direct proof and only to be established by inference from other facts. The old decisions denied not only the power but the propriety of vesting such power in the courts. But the legislature having cast upon the courts such duty we are bound to exercise it. The history of this case is brief. There is little or no conflict between the witnesses or dispute as to the fact. Its salient features are beyond dispute. The deceased, one Cornettia (an Italian), and the prisoner were all at work in the prison peeling potatoes. Cornettia applied some opprobrious epithet to the deceased, upon which the deceased struck Cornettia with a stick. Cornettia then seized a stick or stool and attacked the deceased. While this altercation was transpiring, the prisoner picked up a broom and also attacked the deceased. One Coburn, a convict, but a sort of overseer over the others, slipped between the parties to stop the conflict and seized the defendant. A convict named Cush took the broom from the prisoner and thrust him aside the distance of two or three barrels, when the prisoner immediately took the knife which he had used in his work, rushed towards the deceased and struck him, inflicting the fatal blow. It was proved there was no dispute or ill-feeling between the parties prior to this occurrence. The whole affray lasted, according to one witness, five minutes, the others place it at from two to three minutes. The time that elapsed between the disarming of the prisoner by Cush and the striking of the blow with the knife was, according to one witness, "half a second;" according to another it was "instantly." This is substantially the whole occurrence. Now, is there sufficient evidence in it to warrant the finding of the jury of deliberation on the part of the prisoner. It is true that such deliberation is incapable of proof save as an inference from other facts. But that does not authorize the jury to arbitrarily draw such inference as they see fit. The facts must point to and warrant the inference, otherwise a verdict cannot stand. This undoubtedly is the rule in civil cases. It should hardly be less potent where life is involved.

The inference is generally proved by the nature of the occurrence, the manner in which the crime is committed, the weapon, threats or expression of hostile feeling toward the deceased, preparation on the part of the prisoner. But this case seems barren of all such features. There is not ground even for suspicion that prior to the altercation

the prisoner meditated an injury to the deceased. When the fight between the deceased and Cornettia occurred, the prisoner attacked deceased but with a weapon not calculated to inflict fatal or even serious injuries. For while many blows were struck by Cornettia and the deceased, who were similarly armed, no serious results followed to either party. When disarmed by Cush the prisoner took from his person the knife not possessed by him for any unlawful purpose, but used in the work in which he had been engaged, and immediately stabs the deceased. The use of the deadly weapon and the thrust at the vital part would warrant the conclusion that the prisoner intended to take life, and therefore that the act was premeditated. But there is nothing to show deliberation, but on the contrary, the facts of the transaction negative that conclusion. As we have said, there is a substantial difference between premeditation and deliberation, a difference more readily appreciated than to be accurately defined. An apt statement is to be found in the opinion of Judge DANIELS in *The People* v. *Leighton ;* speaking of the elements necessary to constitute murder in the first degree, he says: " The execution of the guilty purpose is required to be settled and determined upon reflection, before the crime of murder in the first degree can be committed. A full and determined purpose is rendered necessary as distinguished from a mere impulsive fatal act." No particular period of time is requisite for the deliberation, but still deliberation must take place. We do not say that in no supposable case could deliberation be consummated in so brief a period as that occupied by the broil in which this crime was committed, but we do say that in this case there is nothing to show deliberation, but rather a passionate, vicious impulse.

The result of these views is that the prisoner obtains practical immunity for his crime, for being a prisoner for life nothing save a capital execution can increase his punishment. We cannot but think that this consideration affected the verdict. But the law recognizes no distinction between one in the condition of this prisoner and a free person. If it be necessary for the purposes of prison discipline or to protect the lives, whether of keepers or convicts, that offenses committed by prisoners shall be punished more severely than those committed by others, the remedy is with the legislature.

The courts must carry out the law as they find it, and not strain it to punish even the greatest of offenders.

The conviction and judgment should be reversed, and a new trial ordered

PRATT, J.:

I concur in the opinion of Justice CULLEN, but as the point is made that the Oyer and Terminer is the only court that can grant a new trial in this case, on the ground that the evidence is insufficient to sustain a conviction of murder in the first degree, it is proper to make a few suggestions upon that subject.

Prior to the adoption of the new Code of Criminal Procedure it may be conceded that there was no power either in the Oyer and Terminer or the General Term of the Supreme Court to grant a new trial upon the merits.

By section 465 of the Code of Criminal Procedure (par. 6) the court in which the trial is had has power to grant a new trial " when the verdict is contrary to law or clearly against evidence."

It is claimed from this that the court only in which the trial was had has power to grant a new trial upon the grounds stated.

· The answer to this proposition is made plain by referring to the other provisions of the Code relating to the review of criminal trials.

Section 485 provides for the form and contents of the judgment-roll. Part 6 states that the roll shall contain, among other matters, " a copy of the minutes of any proceedings upon a motion either for a new trial or in arrest of judgment."

By section 517 " an appeal to the Supreme Court may be taken by the defendant from the judgment on a conviction after indictment, and upon the appeal any actual decision of the court in an intermediate order or proceeding *forming a part* of the judgment-roll as prescribed by section 485 *may be reviewed.*"

It thus seems clear that inasmuch as a motion may be made for a new trial in the court in which the trial is had upon the ground that the verdict is contrary to law or against the weight of evidence, and such motion and decision therein being an intermediate order or proceeding forming a part of the judgment-roll, it may be reviewed by the General Term in like manner as a bill of exceptions.

If these views satisfactorily answer the question of power the only remaining point to be considered is whether the verdict was contrary to law and against the weight of evidence.

It seems to me that the opinion of Mr Justice CULLEN fairly disposes of that question.

Judgment reversed and new trial ordered.

BARNARD, P. J., dissented.

Conviction and judgment reversed and new trial granted.